UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RODNEY BLESSING,

                                    Plaintiff,

v.                                                          Case No. 3:14-CV-1489 (GTS)

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                                    Defendant.
_____

APPEARANCES:                                        OF COUNSEL:

LACHMAN & GORTON                              PETER A. GORTON, ESQ.
  Counsel for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, NY 13761

U.S. SOCIAL SECURITY ADMIN.               HEETANO SHAMSOONDAR, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II   Special Assistant U.S. Attorney
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by Rodney Blessing

("Plaintiff") against the Acting Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions

for judgment on the pleadings (Dkt. Nos. 22, 23). For the reasons set forth below, Plaintiff's

motion is denied and Defendant's motion is granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background[1]

Plaintiff was born on May 18, 1947.  (Tr. 75, 213.)  He obtained his GED in 1966, which is his highest level of education.  (Tr. 82, 213.)  Plaintiff was drafted into military service in 1967 during the Vietnam War where he was responsible for conducting daily mine sweeps and involved in heavy combat.  (Tr. 121, 180.)  During Vietnam, Plaintiff used marijuana and, upon returning to the United States, developed a drug addiction to heroin and cocaine as well as alcohol abuse.  (Tr. 120, 209.)  Plaintiff was incarcerated twice, once for shooting a policeman and once for armed robbery (in order to obtain money to buy drugs), for a total of eighteen years. (Tr. 121-22, 190.)

Plaintiff's past work experience includes his military service, working at his father's auto body shop after returning from Vietnam, and miscellaneous jobs while in prison.  (Tr. 120, 190.) In addition, after being released from prison, Plaintiff began working at his wife's catering business in California.  (Tr. 193.)  Plaintiff worked there from 1991 through 2005 where he assisted with cooking, cleaning, supervising, and paperwork/bookkeeping.  (Tr. 79.)  At some point, Plaintiff's wife developed aplastic anemia and was unable to run the business, causing it to go bankrupt.  (Tr. 198.)  Plaintiff and his wife relocated to Binghamton, New York, where he began treatment with the Department of Veterans Affairs ("VA") in Wilkes Barre, Pennsylvania, for his drug abuse and post-traumatic stress disorder ("PTSD") related to his military service. (Tr. 70-A, 199, 120-25.)  At the time of his hearing before Administrative Law Judge ("the

---

[1]    A more thorough recitation of the facts, Plaintiff's testimony, and treatment history is contained in an underlying decision by this Court, which can be found at *Blessing v. Colvin*, 951 F. Supp. 2d 367 (N.D.N.Y. 2013) (Young, J.).

ALJ") Dennis O'Leary, Plaintiff was unemployed and stayed at home to take care of his wife and kids. (Tr. 35-36, 190-91.)

Generally, Plaintiff's alleged disability consists of knee and ankle impairments, including arthritis of the lower extremities. (Tr. 78, 209.) In addition, Plaintiff alleged mental limitations due to his PTSD and history of polysubstance abuse. (Tr. 208-09.) Plaintiff's alleged disability onset date is December 30, 2005, and his date last insured is March 31, 2006. (Tr. 206.)

### B. Procedural History

On February 9, 2006, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. (Tr. 206.) Plaintiff's application was initially denied after which he timely requested a hearing before an ALJ. (Tr. 28.) On April 21, 2008, Plaintiff appeared before ALJ Dennis O'Leary. (Tr. 174-202.) ALJ O'Leary issued a decision on May 27, 2008, finding Plaintiff not disabled during the relevant period. (Tr. 206.) On October 28, 2008, the Appeals Council ("AC") denied Plaintiff's request for review. (Tr. 4.) Subsequently, Plaintiff filed a civil action in this Court. *Blessing v. Colvin*, 951 F. Supp. 2d 367 (N.D.N.Y. 2013) (Young, J., sitting by designation).

On June 24, 2013, United States District Judge Young remanded the claim to the Commissioner, pursuant to sentence four of 42 U.S.C. 405(g), directing the Commissioner to consider medical records dated after the date last insured for a determination regarding Plaintiff's disability without drug use. (Tr. 236.) On January 23, 2013, the AC vacated the final decision and remanded the claims to an ALJ for further proceedings. (Tr. 237.) Plaintiff was given the opportunity to submit additional records and to appear before ALJ Bruce S. Fein for a second administrative hearing. (Tr. 240-41, 296.) However, by letter dated April 30, 2014,

Plaintiff advised ALJ Fein that further testimony was not required.  (Tr. 291-92.)  Nevertheless, on May 9, 2014, Plaintiff appeared for a hearing before ALJ Fein and reiterated that no further testimony was necessary and the record was complete.  (Tr. 296-97.)  Plaintiff also requested that ALJ Fein rely on the transcript from the 2008 hearing before ALJ O'Leary.  (*Id.*)

On October 6, 2014, ALJ Fein issued a decision finding Plaintiff not disabled on or before the date last insured.  (Tr. 206-14.)  Plaintiff then commenced this action on December 11, 2014.  (Dkt. No. 1.)  Neither party specifically addresses how the decision of the ALJ became the final decision of the Commissioner.  The ALJ's decision stated as follows: "[this] decision will become final on the 61st day following the date of this notice. After [this] decision becomes final, [Plaintiff] will have 60 days to file a new civil action during the 60-day period starting with the day [this] decision becomes final."  (T. 204.)  It appears that 20 C.F.R. § 404.966 (Testing Elimination of the Request of Appeals Council Review) was implemented in this case; however, the ALJ's decision does not cite any Regulation or other authority.

### C.     The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law.  (Tr. 208-14.)  First, the ALJ found that Plaintiff had not engaged in substantial gainful activity from his alleged onset date through his date last insured.  (Tr. 208.)  Second, the ALJ found that Plaintiff's PTSD and polysubstance abuse were severe impairments, but his arthritis in his lower extremities was a non-severe impairment.  (Tr. 208-09.)  Third, the ALJ found that Plaintiff's mental impairments did not meet or medically equal one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  (Tr. 209-10.)  In so doing, the ALJ considered the Listings in sections 12.06 and 12.09 and the criteria set forth

in paragraphs "B" and "C" of Listing 12.00. (Tr. 209.) Fourth, the ALJ found that Plaintiff had

a residual functional capacity ("RFC") to perform a full range of work at all exertional levels

except that he was limited to simple, repetitive, routine task work in a low-stress job defined as

only occasional decision-making, changes in the work setting, judgment required, and interaction

with coworkers and supervisors. (Tr. 211.) Fifth, the ALJ found that Plaintiff is unable to

perform his past relevant work. (Tr. 213.) Sixth, and finally, the ALJ determined that there are

jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.*)

## II.     THE PARTIES' BRIEFING ON THEIR CROSS-MOTIONS

### A.     Plaintiff's Arguments

Plaintiff makes three separate arguments in support of his motion for judgment on the

pleadings. First, Plaintiff argues that the ALJ failed to properly assess the entire medical record

for the following three reasons: (a) the ALJ found Plaintiff had a marked limitation at steps two

and three in his ability to maintain concentration, persistence, and pace, yet the ALJ failed to

incorporate these limitations into his RFC; (b) the ALJ failed to consider Plaintiff's Global

Assessment of Functioning ("GAF") score of 50, which indicates a "serious impairment in

social, occupational, or school functioning"; and (c) the ALJ failed to consider and account for

the periodic episodes of PTSD that Plaintiff suffers on a daily basis, such as flashbacks from

Vietnam, which prevent him from functioning normally (and likely keeping a full-time job) until

the flashbacks subside. (*Id.* at 14-17.)

Second, Plaintiff argues that the ALJ erred by failing to properly consider the medical

opinion evidence. Specifically, Plaintiff argues that the ALJ completely ignored the opinion of

Dr. Charles McGurk and failed to give sufficient weight to the opinion of Dr. Michael

Thompson, both of whom are psychiatrists with the VA. (*Id.* at 9-14.) Finally, Plaintiff argues that the ALJ failed to consider the VA's determination that Plaintiff's PTSD rendered him "permanently and totally disabled." (*Id.* at 10.)

Third, and finally, Plaintiff argues that the ALJ erred at step five of the sequential evaluation by not consulting with a vocational expert ("VE") to determine whether there are jobs in significant numbers in the national economy that Plaintiff can perform. (Dkt. No. 22, at 7-8 [Pl.'s Mem. of Law].) More specifically, Plaintiff argues that the ALJ's reliance on SSR 85-15, which provides guidelines on the use of the Medical-Vocational Guidelines ("the Grids"), is misplaced because the combination of Plaintiff's limitations are too extensive. (*Id.* at 8.)

### B.      Defendant's Arguments

In response to Plaintiff's motion and in support of her own cross-motion, Defendant makes the following three arguments. First, Defendant argues that the ALJ properly considered the entire record for the following five reasons: (a) the ALJ determined that Plaintiff had marked limitations at step three of the sequential evaluation, which is not an RFC assessment that requires as much detail as the assessment at steps four and five; (b) Plaintiff failed to satisfy his burden demonstrating that he had additional limitations related to those that were marked; (c) although the ALJ did not specifically mention Plaintiff's GAF score, he considered Dr. Thompson's treatment notes, which contained his GAF score; (d) because Plaintiff's GAF score was determined more than a year after his date last insured, it is not relevant to the time period at issue; and (c) the ALJ properly evaluated Plaintiff's credibility regarding the alleged intensity, persistence, and limiting effects of his PTSD related symptoms, such as flashbacks. (Dkt. No. 23, at 12-15 [Def.'s Opp'n Mem. of Law].)

Second, Defendant argues that any alleged failure to consider Dr. McGurk's opinion does not warrant remand for the following three reasons: (a) because Dr. McGurk began treating Plaintiff in January of 2007, which is after his date last insured, it is not relevant to the time period at issue; (b) Dr. McGurk's opinion appears to address the materiality of drug and/or alcohol abuse to the finding of disability, which is not relevant to the present matter but was relevant to the underlying issues before ALJ O'Leary; and (c) the treatment notes referenced by Plaintiff contain only Plaintiff's subjective complaints to Dr. McGurk and no objective findings. (*Id.* 7-9.)

With respect to the alleged failure to consider the VA's determination that Plaintiff is "permanently and totally disabled," Defendant argues that, because this determination was rendered in October of 2008 (which is after Plaintiff's date last insured), it is not relevant to the time period at issue. (*Id.* at 9.) Furthermore, Defendant argues that the VA's decision simply stated that Plaintiff was disabled and did not provide any limitations or evidence that was used in reaching this determination. (*Id.*) Finally, Defendant argues that the responsibility for determining whether an individual is disabled is reserved to the Commissioner and an opinion that Plaintiff is disabled, even from another government agency, is not entitled to special weight. (*Id.*)

With regard to the ALJ's alleged failure to give Dr. Thompson's opinion controlling weight, Defendant argues that the ALJ considered the opinion and properly gave it limited weight because Dr. Thompson did not examine Plaintiff until more than a year after his date last insured. (*Id.* at 9-10.) In addition, Defendant notes that the ALJ considered Dr. Thompson's opinion that Plaintiff could not engage in full-time work but properly disregarded that opinion

because it is an issue reserved for determination by the Commissioner.  (*Id.* at 10.)

Third, and finally, Defendant argues that vocational expert testimony was not required for the following three reasons: (a) where a claimant cannot perform the full range of work due to his nonexertional limitations, the ALJ may use the Grids as a framework for determining whether there is work in the national economy that Plaintiff can perform; (b) Plaintiff's occupational base was not significantly compromised because he is capable of performing the basic mental demands of unskilled work; and (c) unskilled work requires working primarily with objects, rather than data or people.  (*Id.* at 15-16.)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or if the determination was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

Where evidence is deemed susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d

Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts

from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained

"even where substantial evidence may support the plaintiff's position and despite that the court's

independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v.

Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the

Commissioner's determination considerable deference, and may not substitute "its own

judgment for that of the [Commissioner], even if it might justifiably have reached a different

result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041

(2d Cir. 1984).

###### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an

individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520. The

Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v.

Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV.    ANALYSIS

### A.    Whether the ALJ Failed to Properly Assess the Entire Evidentiary Record

After carefully considering the matter, the Court answers this question in the negative for the reasons set forth below.

#### 1.    Whether the ALJ Erred by Not Adequately Incorporating Plaintiff's Marked Limitations in Maintaining Concentration, Persistence, or Pace in His RFC

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 23, at 12 [Def.'s Opp'n Mem. of Law].) To those reasons, the Court would add only the following analysis.

At step three of the sequential analysis, the ALJ assessed whether Plaintiff's mental impairments satisfied the "paragraph B" criteria of § 12.00 of the Listings, and concluded they

did not.  (Tr. 209-10.)  Specifically, the ALJ found that Plaintiff had "moderate restriction" in activities of daily living and in social functioning but "marked difficulties" in concentration, persistence, or pace.  (Tr. 210.)  Regarding the latter, the ALJ explained that, despite Plaintiff's allegations, the record did not evince more than marked difficulties in concentration, persistence, or pace.  (*Id.*)  In support of this finding, the ALJ noted that Plaintiff reported watching television "a lot," reading "a lot," playing the drums, and being able to follow spoken instructions as well as managing finances.  (*Id.*)  The ALJ also relied on a report from Plaintiff's sister-in-law, which stated that Plaintiff drove, read, watched television, finished what he started, and could follow written and spoken instructions "okay."  (*Id.*)  Having made these findings at step three, the ALJ did not explicitly include any limitations in concentration, persistence, or pace in his RFC determination.  However, as noted above in Part I.C. of this Decision and Order, the ALJ did include other non-exertional mental limitations in his RFC determination. For example, the ALJ limited Plaintiff to simple, routine, repetitive tasks with only occasional decision-making and interaction with others.  (Tr. 211-12.)

The ALJ accurately stated that, at step three, "[t]he limitations identified in the 'paragraph B' criteria are not a[n] [RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process."  (Tr. 211); SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996).  "It follows that the ALJ is not required to explicitly include the 'paragraph b' limitations in his RFC assessment or hypothetical to the VE." *Huestis v. Comm'r*, 13-CV-0201, 2014 WL 4209927, at *5 (D. Vt. Aug. 25, 2014); *see also Burrows v. Barnhart*, 03-CV-0342, 2007 WL 708627, at *14 (D. Conn. Feb. 20, 2007) (holding that ALJ's "paragraph B" finding that plaintiff seldom had deficiencies in concentration, persistence, or

pace "related to his analysis of the severity of his mental impairments under step 2, and thus he was not required to include this finding in his more detailed [RFC] assessment at step 5"); *accord*, *Carattini v. Colvin*, 13-CV-7806, 2015 WL 1499509, at *9 (S.D.N.Y. Mar. 31, 2015).

Indeed, the Second Circuit recently affirmed this Court's decision in *McIntyre v. Colvin*, 758 F.3d 146 (2d Cir. 2014), which dealt with this very issue in the context of a hypothetical question posed to a VE. In that case, the ALJ found at step three that the plaintiff had moderate difficulties in maintaining concentration, persistence, or pace, but did not explicitly include those non-exertional functional limitations in his RFC determination or the hypothetical to the VE. *McIntyre*, 758 F.3d at 150. The Second Circuit found that the ALJ's hypothetical should have explicitly incorporated the plaintiff's limitations in concentration, persistence, or pace. *Id.* at 151. However, the Court concluded that the ALJ's error was harmless, holding that

> an ALJ's failure to incorporate non-exertional limitations in a hypothetical (that is otherwise supported by evidence in the record) is harmless error if (1) "medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace," and the challenged hypothetical is limited "to include only unskilled work"; or (2) the hypothetical "otherwise implicitly account[ed] for a claimant's limitations in concentration, persistence, and pace[.]"

*Id.* (quoting *Winschel v. Comm'r*, 631 F.3d 1176, 1180 [11th Cir. 2011]).

To be sure, the ALJ in the present case did not elicit the opinion of a VE. Nonetheless, for the reasons discussed above, the Court is satisfied that this test has been met here. Therefore, even assuming the ALJ erred in failing to incorporate Plaintiff's limitations in concentration, persistence, or pace into his RFC determination, the error was harmless.

## 2. Whether the ALJ Failed to Properly Consider Plaintiff's GAF Scores

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 23, at 12-13 [Def.'s Opp'n Mem. of Law].) To those reasons, the Court would add only the following analysis.

Plaintiff argues that his multiple GAF scores of 50 indicate an inability to work. (Dkt. No. 22, at 15-16 [Pl.'s Mem. of Law].) According to Plaintiff, the ALJ did not sufficiently address these scores, which are "contrary to [the ALJ's] overall mental RFC determination and his apparent conclusion that Plaintiff did not suffer from ongoing, severe psychiatric impairments." (*Id.* at 16.) Plaintiff argues that the failure to specifically discuss and/or consider Plaintiff's GAF scores warrants remand. (*Id.* at 15-16.)

Under 20 C.F.R. § 404.1520(3), the ALJ must "consider all evidence" in order to determine whether a claimant is disabled. It is also true, however, that an ALJ "is not required to discuss all the evidence submitted, and his failure to cite specific evidence does not indicate it was not considered." *Santos v. Astrue*, 709 F. Supp. 2d 207, 211 (S.D.N.Y. 2010). "GAF is a scale that indicates a clinician's overall opinion of an individual's psychological, social, and occupational functioning." *Marvin v. Colvin*, 12-CV-1779, 2014 WL 1293509, at *2 (N.D.N.Y. Mar. 31, 2014) (Sharpe, C.J.). "GAF scores of forty-one to fifty indicate that the individual has 'serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Marvin*, 2014 WL 1293509, at *2 (quoting *Stewart v. Astrue*, 10-CV-3032, 2012 WL 314867, at *2 n.1 [E.D.N.Y. Feb. 1, 2012]). "While it is true that GAF scores may be relevant to an ALJ's severity and RFC determinations . . . , the ALJ need not

-13-

explicitly mention the GAF score." *Id.* (internal citations omitted); *see also Ortiz Torres v. Colvin*, 939 F. Supp. 2d 172, 184 (N.D.N.Y. 2013) (Young, J.) (holding that "[t]his Court rules that the hearing officer's failure to discuss the [GAF] scores does not constitute an error worthy of remand"); *Dwyer v. Astrue*, 800 F. Supp. 2d 542, 548 (S.D.N.Y. 2011) (noting that "the ALJ's failure to mention [the claimant's] GAF of [fifty] is insufficient to conclude that she failed to consider it").

Moreover, courts in this Circuit have held that "a GAF score is merely a 'snapshot opinion of one or more doctors as to an individual's level of social, psychological and occupational function at a specific point in time[,]' whereas '[a] determination of disability must be based on the entire record.'" *Schneider v. Colvin*, 13-CV-0790, 2014 WL 4269083, at *4 (D. Conn. Aug. 29, 2014) (quoting *Malloy v. Astrue*, 10-CV-0190, 2010 WL 7865083, at *26 [D. Conn. Nov. 17, 2010]).

Here, the ALJ discussed Dr. Thompson's treatment notes from September of 2007, which contained Plaintiff's GAF score of 50. (Tr. 212, 124.) In addition, the ALJ references Dr. McGurk's treatment notes in his discussion regarding Plaintiff's clinical findings, indicating that he reviewed those records as well.[2] (Tr. 212.) Like Dr. Thompson, Dr. McGurk also indicates that Plaintiff has a GAF score of 50. (Tr. 133.) Accordingly, the Court is satisfied that the ALJ considered Plaintiff's GAF score. *See Zabala v. Astrue*, 05-CV-4483, 2008 WL 136356, at *4 (S.D.N.Y. Jan. 14, 2008) (noting that "while the ALJ did not specifically discuss [Plaintiff's] low GAF score, the ALJ did expressly discuss the clinical notes that accompanied the score");

---

[2]     The ALJ does not state that the notes are from Dr. McGurk's examination of Plaintiff. (Tr. 212.) Rather, the ALJ references Exhibit "5F," which is Dr. McGurk's treatment notes from January of 2007 through April 18, 2008. (Tr. 130-41.)

*Parker v. Comm'r*, 10-CV-0195, 2011 WL 1838981, at *5 (D.Vt. May 13, 2011) ("[Plaintiff]

claims that the ALJ's failure to discuss the GAF scores of 50 or below was error, but, as this

Court has stated before, GAF scores–in and of themselves–do not demonstrate that an

impairment significantly interferes with a claimant's ability to work.").

### 3. Whether the ALJ Failed to Properly Evaluate Plaintiff's Credibility

After carefully considering the matter, the Court answers this question in the negative

for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 23, at 13-15 [Def.'s Opp'n

Mem. of Law].)  To those reasons, the Court would add only the following analysis.

A plaintiff's allegation of pain is "entitled to great weight where . . . it is supported by

objective medical evidence."  *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009)

(quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 [2d Cir. 1992]).  However, the ALJ "is

not required to accept [a plaintiff's] subjective complaints without question; he may exercise

discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence

in the record."  *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15

2012).  "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient

specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's

disbelief."  *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent

evidence in the record.  First, the ALJ must determine whether the claimant has medically

determinable impairments, which could reasonably be expected to produce the pain or other

symptoms alleged."  *Id.* at 271.

Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.*; *see also* 20 C.F.R. § 404.1529(i)-(vii). Further, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 [2d Cir. 1983]). "If there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'" *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 206 (N.D.N.Y. 2012) (Suddaby, J.) (quoting *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 [2d Cir. 1984]).

Here, the ALJ considered Plaintiff's alleged symptoms related to his PTSD and functional limitations and found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible for the following three reasons. (Tr. 211-13.) First, the ALJ considered Plaintiff's varied daily activities and found they did not support his allegations of disability. (Tr. 211-12.) Specifically, the ALJ noted that Plaintiff drove, met his own personal needs, assisted his wife, cared for his children, prepared meals,

shopped, did housework and laundry, read, played drums, went to church, and attended school functions. (Tr. 212.) The ALJ also considered Plaintiff's testimony that he suffers from daily flashbacks of Vietnam, has difficulty completing tasks, and with memory and concentration. (Tr. 211-12). Mrs. Blessing and Plaintiff's sister-in-law reported similar symptoms but, given the potential for bias, the ALJ afforded their testimony only some weight. (Tr. 212.)

Second, the ALJ noted that "[t]he record was devoid of any mental health treatment notes or mental status examinations from the period through the date last insured." (Tr. 212.) *See also* 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect of those symptoms, such as pain, may have on your ability to work"); 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say you are disabled. You must provide evidence, without redaction, showing how your impairment(s) affects your functioning during the time you say you are disabled"). However, the ALJ did consider treatment notes from Dr. Thompson and Dr. McGurk, the earliest of which were from January of 2007, approximately one year after Plaintiff's date last insured. (Tr. 212.) The ALJ discussed Dr. Thompson's opinion and concluded that it was not supported by Plaintiff's other treatment notes and was inconsistent with Plaintiff's daily activities. (*Id.*)

Third, with respect to Plaintiff's other treatment records, the ALJ noted that, although Plaintiff had some positive clinical findings since his date last insured, the majority of his clinical findings were negative. (*Id.*) The clinical findings also indicated that Plaintiff had short-term memory skills and intact concentration skills. (*Id.*) The ALJ noted that, even when

-17-

Plaintiff began receiving mental health treatment, the treatment (aside from suboxone therapy) was conservative.  (*Id.*)

The Court finds that the ALJ's decision to discount the credibility of Plaintiff's subjective complaints was adequately justified in light of evidence regarding the extent of his daily activities, lack of treatment records from the relevant time period, and other clinical findings that were negative.

**B.      Whether the ALJ Failed to Properly Consider the Medical Opinion Evidence**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 23, at 7-12 [Def.'s Opp'n Mem. of Law].)  To those reasons, the Court would add only the following analysis.

**1.      Dr. Charles McGurk**

Plaintiff argues that the opinion of Dr. McGurk "is never even considered by [the] ALJ as there is not a single reference in his decision to Dr. McGurk[']s opinion." (Dkt. No. 22, at 10 [Pl.'s Mem. of Law].)  As discussed above in Point III.A.2. of this Decision and Order, the ALJ references Exhibit 5F in his RFC analysis, which contains Dr. McGurk's treatment notes from January of 2007 through April 18, 2008.  (Tr. 212.)  In addition, Exhibit 3F contains outpatient treatment notes from Dr. McGurk and is cited by the ALJ in other areas of his decision.  (Tr. 208-09.)  Therefore, contrary to Plaintiff's assertions, it is clear that the ALJ did in fact consider Dr. McGurk's treatment notes.

**2.      Dr. Michael Thompson**

Plaintiff appears to argue that, because Dr. Thompson was one of Plaintiff's treating physicians, his opinion was entitled to controlling weight.  (Dkt. No. 22, at 13 [Pl.'s Mem. of Law].)  In addition, Plaintiff argues that the ALJ failed to sufficiently set forth his reasons for

according Dr. Thompson's opinion only limited weight and that he substituted his lay opinion for the medical opinions of record. (*Id.*)

The treating physician rule states that "a treating physician's opinion on the nature and severity of a claimant's condition is entitled to 'controlling weight' if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" *Bonneau v. Astrue*, 13-CV-0026, 2014 WL 31301, at *5 (D.Vt. Jan. 3, 2014) (quoting 20 C.F.R. § 404.1527[c][2]); *see also Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (noting that controlling weight does not apply where "treating physician issued opinions that [were] not consistent with other substantial evidence in the record"). In determining whether a treating physician's opinion is consistent with other substantial evidence in the record, "genuine conflicts in the medical evidence are for the ALJ to resolve." *Gunter v. Comm'r*, 361 F. App'x 197, 199 (2d Cir. 2010).

When the ALJ decides to afford less than controlling weight to a treating physician's opinion, the ALJ must consider the regulatory factors, including "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. §§ 404.1527(c)(2). However, where an ALJ's reasoning and adherence to the Regulations is clear, he is not required to explicitly go through each and every factor of the Regulation. *Atwater*, 512 F. App'x at 70 (holding that "[w]e require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear"). Nonetheless, the ALJ must "give good reasons" for the weight afforded to the treating source's opinion. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008).

Here, in weighing Dr. Thompson's opinion, the ALJ took note of (1) the conflict between Dr. Thompson's opinion and treatment notes from other sources, (2) the fact that the record was devoid of any mental health treatment notes or mental status examinations from Plaintiff's alleged onset date through his date last insured, (3) the fact that Dr. Thompson's opinion was inconsistent with Plaintiff's daily activities, and (4) the fact that Dr. Thompson did not examine Plaintiff until after his date last insured. (Tr. 212.) The ALJ further noted that, although he considered Dr. Thompson's opinion regarding Plaintiff's disability, he did not accord it any special weight because this is an issue reserved to the Commissioner. (*Id.*) Accordingly, the ALJ concluded that Dr. Thompson's opinion should be afforded only limited weight. (*Id.*)

The Court finds that the ALJ's reasoning and conclusions provided a sufficient basis on which to undermine the presumption of the treating physician rule. Moreover, in determining how much weight to give Dr. Thompson's opinion, the ALJ essentially addressed each required factor in evaluating the non-controlling opinion of a treating physician. Specifically, the ALJ considered the evidence in support of Dr. Thompson's opinion and the opinion's consistency with the record as a whole. (Tr. 212.) Furthermore, it is evident that the ALJ was aware that Dr. Thompson was a psychiatrist and, therefore, a specialist. *See Rojas v. Astrue*, 09-CV-6698, 2010 WL 1047626, at *7 (S.D.N.Y. Mar. 22, 2010) ("The ALJ noted that Dr. Kathpalia was a psychiatrist, and therefore a specialist"). Finally, for the reasons discussed above, the ALJ provided "good reasons" for his decision to give Dr. Thompson's opinion limited weight. Accordingly, the Court finds the ALJ's decision was based upon substantial evidence and there is no indication that the ALJ substituted his lay opinion for the medical opinions of record.

### 3.    Disability Determination by the VA

Plaintiff argues that the ALJ was required to consider the VA's determination that his PTSD rendered him "permanently and totally disabled" but failed to do so.  (Dkt. No. 22, at 10 [Pl.'s Mem. of Law].)  As the ALJ correctly noted in his decision, "a determination made by another agency (e.g., the Veteran's Administration) that you are disabled is not binding on the Social Security Administration." (Tr. 212) (citing SSR 06-3p).  *See also* 20 C.F.R. § 404.1504; *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (holding that disability determination made by the VA was not binding on SSA).  However, "[i]n the Second Circuit, the VA's determination of disability is generally entitled to 'some weight.'" *Machia v. Astrue*, 670 F. Supp. 2d 326, 334 (D.Vt. 2009) (citing *Hankerson v. Harris*, 636 F.2d 893, 897 [2d Cir. 1980]); *Atwater*, 512 F. App'x at 70 (noting that a VA's determination "is entitled to some weight and should be considered").

Here, the ALJ acknowledged the VA's determination by pointing out that it was not binding upon him.  (Tr. 212.)  Although the ALJ did not explicitly accord the VA's determination any specific weight, he discussed Dr. Thompson's treatment notes, which formed the basis for the VA's decision.  (Tr. 159, 212.)  More specifically, the VA recited portions of Dr. Thompson's opinion from his examination of Plaintiff in September of 2007 before determining that Plaintiff was permanently and totally disabled.  (Tr. 159.)  The VA appears to have substantially (if not solely) relied on Dr. Thompson's opinion in making its decision.  (*Id.*)  The ALJ discussed Dr. Thompson's opinion in his RFC analysis and gave it only limited weight, noting that it was not supported by Plaintiff's treatment notes and was inconsistent with his activities.  (Tr. 212.)  To be sure, the ALJ should have stated what weight, if any, he gave to the

VA's disability determination when making his ruling.  *See Lawler v. Astrue*, 10-CV-3397, 2011 WL 5825781, at *9 (E.D.N.Y. Nov. 14, 2011) (noting that "the VA's disability determination [should] be accorded some actual weight, independent of and in addition to, the evidence in the record itself); *accord*, *Machia*, 670 F. Supp. 2d at 336.  However, having carefully considered the circumstances of this case (in which the ALJ fully considered the underlying evidence for the VA's determination), and having found that the ALJ's decision is supported by substantial evidence, the Court finds any error to independently assign the VA's determination a specific weight to be harmless.  *See Pelkey v. Barnhart*, 433 F.3d 575, 579 (8th Cir. 2006) (holding, where VA determined a claimant was 60 percent disabled, that, "[a]lthough he did not specifically mention the 60 percent figure, the ALJ did not err because he fully considered the evidence underlying the VA's final conclusion that [claimant] was 60 percent disabled"); *Lohnas v. Astrue*, 510 F. App'x 13, 14 (2d Cir. 2013) (holding that, where "the ALJ did acknowledge the [VA's] determination of disability . . . and because the Commissioner's decision was supported by substantial evidence, any alleged failure by the ALJ to consider fully the disability determination by the [VA] does not affect our decision"); *Fransen v. Sec'y of Health & Human Servs.*, 610 F. Supp. 185, 188 (E.D.N.Y. 1985) (holding that "the Department of Labor finding of total disability . . . does not significantly affect the ALJ's decision, and, in view of the extent of medical evidence considered by the ALJ, his failure to explicitly consider the finding is at most harmless error").

### C.    Whether the ALJ Erred in Failing to Consult a Vocational Expert

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 23, at 15-16 [Def.'s Opp'n Mem. of Law].)  To those reasons, the Court would add only the following analysis.

The Second Circuit has held that, "[i]f a claimant has nonexertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert." *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Bapp v. Bowen* 802 F.2d 601, 605 [2d Cir. 1986]); *see also Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013) (noting that "[w]e have explained that the ALJ cannot rely on the Grids if a non-exertional impairment has anymore than a 'negligible' impact on a claimant's ability to perform the full range of work, and instead must obtain the testimony of a vocational expert."). "However, the 'mere existence of a nonexertional impairment does not automatically . . . preclude reliance on the guidelines.'" *Zabala*, 595 F.3d at 410-11 (quoting *Bapp*, 802 F.2d at 603). "A nonexertional impairment 'significantly limit[s]' a claimant's range of work when it causes an 'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" *Id.* at 411 (quoting *Bapp*, 802 F.2d at 605-06). Finally, when an ALJ relies on the Grids, rather than the testimony of a VE, the ALJ is obligated to explain his finding that the claimant's non-exertional limitations had only a negligible impact on the range of work permitted by his exertional limitations. *Prince v. Colvin*, 13-CV-7666, 2015 WL 1408411, at *22 (S.D.N.Y. Mar. 27, 2015).

Here, the ALJ determined that, "[t]hrough the date last insured, the claimant's ability to perform work at all exertional levels was compromised by non-exertional limitations. However, those limitations had little or no effect on the occupational base of unskilled work at all exertional levels." (Tr. 213.) Furthermore, the ALJ found that Plaintiff did not have significant limitations in his ability to perform basic mental demands, such as the following: the ability to

understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting. (Tr. 214.) In reaching these determinations, the ALJ considered the testimony of both Plaintiff and his wife, Alyce Blessing, a report submitted by Plaintiff's sister-in-law, and Dr. Thompson's opinion from an examination conducted in September of 2007. (Tr. 211-12.) The ALJ also noted that the record was devoid of any mental health treatment notes or mental status examinations from the relevant time period, his clinical findings were mostly negative, and his mental health treatment was mostly conservative. (Tr. 212.) Accordingly, because the ALJ determined that Plaintiff's mental condition did not limit his ability to perform unskilled work, his non-exertional limitations did not result in an additional loss of work capacity. Therefore, the ALJ's use of the Grids was permissible.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 22) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 23) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: November 19, 2015
　　　　Syracuse, New York

Hon. Glenn T. Suddaby
Chief, U.S. District Judge